NOTICE
Decision filed 08/28/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180574

NO. 5-18-0574

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* ESTATE OF VINCENT SIEDLER, Deceased | ) ) ) | Appeal from the Circuit Court of Pope County. |
| (Shirley Bramlet, as Independent Executor of the Estate of Vincent Siedler, and David Bramlet, | ) ) ) | |
| Petitioners-Appellees, | ) ) | |
| v. | ) ) | No. 18-P-7 |
| Cody Hopkins and Stephen Hopkins, | ) ) ) | Honorable Joseph M. Leberman, |
| Respondents-Appellants). | ) ) | Judge, presiding. |

_____

JUSTICE BOIE delivered the judgment of the court, with opinion.
Justices Welch and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1    This case concerns the interpretation of the language of the last will and testament of Vincent Siedler. The will at issue granted the petitioner, David Bramlet, an option to purchase the estate's real property at an appraised value or for the purchase price offered by any *bona fide* "third party purchaser," whichever is greater. The money the estate receives from the sale of the real estate will become part of the estate's residue and will be distributed to the residual legatees named in the will. A residual legatee under the will, Cody Hopkins, who will receive 26.66% of the estate's residue, made an offer to purchase the estate's real estate at a price higher than its appraised value.

1

¶ 2    The issue we must determine is whether a legatee under this will (Cody Hopkins) qualifies as a "third party purchaser" as that term is used in the will such that his offer to purchase the estate's real property effectively increases the price that the optionee (Bramlet) must pay to exercise the testamentary option. The independent executor of the estate, Shirley Bramlet, filed a petition asking the circuit court for direction on selling the real estate in light of Hopkins's offer. The circuit court held that a legatee under the will did not qualify as a "third party purchaser" as that term is used in the will for defining the option's purchase price. The circuit court, therefore, concluded that Bramlet was not required to match Cody Hopkins's purchase offer. Cody Hopkins and Stephen Hopkins[1] now appeal the circuit court's order. For the following reasons, we affirm and remand for further proceedings consistent with this decision.

¶ 3                                    BACKGROUND

¶ 4    The decedent, Vincent Siedler, died testate on March 27, 2018. He never married and had no children. He had 16 cousins as his surviving heirs, including Cody Hopkins and Stephen Hopkins. At the time of his death, Siedler owned approximately 218.32 acres of real estate in Pope County, Illinois, which he described in his will as his "farm." He named Shirley Bramlet to serve as the independent executor of his estate.

¶ 5    Siedler's will provides for the distribution of his farm upon his death with the following language:

> "I hereby direct that my farm in Pope County, Illinois, be appraised for fair cash market value by an independent appraiser within 90 days after my death. Upon completion of this appraisal, the Executor shall notify David Bramlet (who resides at 90 Oak Road,

---

[1]Stephen Hopkins is also a legatee under the will and will receive the same percentage of the estate's residue as Cody Hopkins. The record indicates that only Cody Hopkins made the offer to purchase the real estate, but Cody Hopkins's pleadings filed in the proceedings below stated that they were filed on behalf of both Cody and Stephen Hopkins.

2

Harrisburg, Illinois,) of the appraised value. David Bramlet shall have the non-assignable option to purchase, for cash under the terms of this paragraph, my farm in Pope County, Illinois, (or any portion thereof) for the appraised value or for the purchase price offered by any *bona fide third party purchaser*, whichever is greater. In the event David Bramlet fails to notify the Executor of his desire to exercise this option within 90 days of the date of notice to him of the appraised value or for the purchase price offered by any *bona fide third party purchaser*, or if David Bramlet fails to close the sale of the farm in Pope County, Illinois, within 90 days of the exercise of this option, this option shall terminate and my farm in Pope County, Illinois, shall be sold at a public or private sale, at the discretion of the Executor. The proceeds of such sale shall be added to my residuary estate and distributed pursuant to the provisions set forth herein." (Emphases added.)[2]

¶ 6    Siedler's will provided that 20% of the residue of his estate be distributed to two Catholic churches and two cemeteries, each receiving 5% of the residue. The remaining 80% of the residue of the estate is to be distributed in equal shares to Kathy Lynn Ellis, Cody Hopkins, and Stephen Hopkins.

¶ 7    On May 10, 2018, the independent executor obtained an appraisal of the real estate as required by the terms of the will. The appraiser valued the real estate at $371,000 ($1700 per acre). The executor notified Bramlet of the appraisal, and Bramlet gave the executor notice of his intent to exercise the option to purchase the real estate at the appraised value. The parties agree that an individual named Gary Evans qualified as a *bona fide* "third party purchaser" and made an offer to purchase 40 acres of the farm for $80,000. On July 19, 2018, Bramlet exercised his right under the option by matching Evans' offer at $2000 per acre for the 40 acres. On August 31, 2018, at the

---

[2]Our emphasis in this decision is only on the words "third party purchaser" and not on "*bona fide.*"

request of Cody Hopkins and Stephen Hopkins, the real estate was appraised again by another appraiser who valued the real estate at $398,000.

¶ 8    On August 13, 2018, the executor filed a petition requesting the court to enter an order authorizing her to sell the real estate to Bramlet. Prior to a hearing on the petition, on or about August 20, 2018, Cody Hopkins offered to purchase all of the real estate for $491,220 ($2250 per acre). Accordingly, the executor filed an amended petition to sell the real estate, asking the court to "make a determination as to which offer to purchase should be accepted" and to "determine the amount of the purchase price."

¶ 9    Cody and Stephen Hopkins filed a response to the executor's amended petition in which they argued that Cody's offer to purchase the real estate constituted an offer from a *bona fide* "third party purchaser" as set forth in the terms of Siedler's will and that Bramlet must match Cody's offer in order to exercise the testamentary option to purchase the farm. In addition, they argued that it was not necessary to proceed with the sale of the farm "so early in the administration" of the estate and that they were unaware of any efforts by the executor to obtain additional third party offers. They asked the court to approve the sale to Cody as the highest bidder or, alternatively, give the executor additional time to seek higher offers from other "*bona fide* third party purchasers."

¶ 10    Bramlet filed a reply to Cody and Stephen Hopkins's response in which he argued that he had a binding contract with the estate as of July 19, 2018, to purchase the real estate in the amount of $2000 per acre for 40 acres (matching Evans' offer) and in the amount of $1700 per acre for the balance of the real estate (appraised value). He concluded that the executor's subsequent petition seeking the court's approval of the sale did not defeat the existence of the contract. Bramlet argued that Cody Hopkins's offer was not timely because it occurred after the contract between Bramlet and the estate. In addition, he argued that, as a beneficiary of the estate, Cody did not qualify as a

4

"third party purchaser." He argued that Siedler used the term "third party purchaser" to preclude a beneficiary from artificially driving up the price of the real estate to the beneficiary's benefit.

¶ 11 On November 2, 2018, the parties appeared in court for a hearing on the executor's amended petition to sell real estate. At the hearing, the parties did not present any witness testimony or other evidence, and they agreed that the issues before the court were legal issues that did not involve disputed issues of fact. The parties, therefore, presented only arguments from counsel on the issue of whether a legatee under the will could qualify as a "third party purchaser." No issues were raised concerning whether Cody's offer was a "*bona fide*" offer.

¶ 12 The executor's attorney told the court that the executor was "seeking the safe haven of the Court to make the determination on whether or not the sale to Mr. Bramlet was consistent with the Last Will and Testament of the decedent." The executor argued that a contract with Bramlet was formed between Bramlet and the estate for the sale of the real estate on July 19, 2018, when Bramlet, having previously agreed to purchase all of the real estate at its appraised value, exercised his right to match Evans' offer to purchase the 40 acres at $2000 per acre. At that point, the executor's attorney argued, there had been an offer and an acceptance.

¶ 13 The attorney representing the Hopkinses argued that the language used by Siedler in his will indicated that Siedler "contemplated this sale going to the highest bidder." He argued that Siedler "wanted as much money as possible to go to his family" and that he contemplated a "third party being someone other than David Bramlet having the opportunity to buy."

¶ 14 At the hearing, the circuit court questioned the Hopkinses' attorney about their alternative request to require the executor to extend the time to allow for additional third party offers. The court noted that the language used by Siedler in his will gave Bramlet only 90 days to complete the sale after he exercised his option to purchase, which indicated to the court that Siedler wanted the real estate sale to close as soon as possible. The court stated that to require the executor to

5

allow more time for additional third party offers would go against the deadlines laid out in the will. The attorney stated, "We would have no objection to extending that time if the Court and the executor would agree to that, but I understand the Court's concern. It may go against the will" because they were "in a tight timeline if we're following the will."

¶ 15    On November 7, 2018, the circuit court entered its order on the executor's amended petition to sell the estate's real estate. The court noted that one of the issues before the court was "whether an heir to the estate could be a '*bona fide* third party purchaser' as that term is used in the will of Vincent Siedler, the decedent." The court noted that it found no case law on point regarding this issue. The court, therefore, looked to the plain and ordinary meaning of the terms within the context in which they were used. In analyzing the language of the will, the court noted that if a "*bona fide* third party" makes an offer to purchase the real estate and Bramlet does not exercise the option to purchase the real estate, the will does not require the executor to sell the real estate to the "*bona fide* third party purchaser." Instead, the court concluded, the will granted the executor authority to sell the real estate to anyone at a public or private sale. The court concluded that this language gave the executor "great discretion."

¶ 16    The court also noted that Siedler used the phrase "*bona fide* third party purchaser" only in connection with defining the purchase price of Bramlet's option to buy, but not in connection with a public or private sale. The court, therefore, concluded that Siedler intended for the phrase to mean "something more than anyone with a cash offer" and must be someone not connected to the estate. The court held that "a beneficiary is not a *bona fide* third party purchaser as that term is used in Vincent Siedler's will."

¶ 17    As further basis for its conclusion, the circuit court explained as follows:

"[T]his interpretation is bolstered by the fact that the interested parties, Cody Hopkins and Steve Hopkins, are beneficiaries under the will. *** Under the terms of the will, Cody

6

Hopkins and Steve Hopkins will each receive one-third (1/3) of eighty percent (80%) of the residual estate. The proceeds of the sale of the real estate is to go into the residual estate. Their offer to purchase the farm at a price of $491,220.00 would net each of them approximately $131,000.00 just from the sale of the real estate. They would essentially be playing with 'house' money. This would allow them to bid more than fair market value because when the proceeds are distributed, they would receive a portion of the purchase price back as part of their share of the estate. This could effectively frustrate the testator's intention to give David Bramlet the option of buying the farm 'for the *appraised value* or for the purchase price offered by any *bona fide third party purchaser*'. If David Bramlet does not exercise his option to purchase the farm or doesn't close within 90 days of exercising his option, Cody Hopkins and/or Steve Hopkins, without the tag of *bona fide* third party purchasers, would be free to make an offer at a private sale or bid at a public sale. At that time, if they want to play with 'house' money, they would not be frustrating the intent of paragraph (2) of Article Five of the will." (Emphases in original.)

¶ 18    The court also noted that a second issue before it was the extent of the executor's discretion and authority to sell the real estate. The court noted that the independent administration of the estate gave the executor "considerable discretion in administering the estate" and that "several times in the will, the testator specifically left decisions to the discretion of the Executor." With respect to the time frame in which the executor must wait before closing on the sale of the real estate, the circuit court ruled as follows:

"[N]othing in paragraph (2) of Article Five requires the Executor to leave open any certain time frame for offers from *bona fide* third party purchasers. While the court is not ruling on whether there was a valid contract in place, the Executor had the discretion to accept David Bramlet's option to purchase the farm and determine, within reason, how long to

7

accept offers from *bona fide* third party purchasers. The court notes that should David Bramlet exercise his option to purchase the farm, he has 90 days to close on that transaction. If the offer period was left open for very long, it could frustrate David Bramlet's ability to complete the transaction within the 90 day period."

¶ 19 The court, therefore, held that "the executor had the discretion to determine the reasonable time period in which the estate would accept offers from *bona fide* third party purchasers." Cody and Stephen Hopkins now appeal from the circuit court's order pursuant to Illinois Supreme Court Rule 304(b)(1) (eff. Mar. 8, 2016).

¶ 20 ANALYSIS

¶ 21 As we have explained, the issue before us on appeal is one involving the interpretation of the language of a will.

¶ 22 It is well established that, in interpreting a decedent's will, "the intention of the testator as expressed in the will must be ascertained and given effect if not prohibited by law." *Armstrong v. Barber*, 239 Ill. 389, 398 (1909). This is the "paramount rule" to which "all others must bend." *Id.* The courts "always look upon the intention of the testator as the polar star to direct them in the construction of wills." (Internal quotation marks omitted.) *Orr v. Yates*, 209 Ill. 222, 229 (1904). Nearly 100 years ago, the supreme court described this rule of law as "so well settled in this state as to require no citation of authority." *Daly v. Daly*, 299 Ill. 268, 272 (1921). Accordingly, the focus of our analysis in interpreting Siedler's will is giving effect to his intent, and the question on appeal is whether the trial court's construction of the will gives effect to his intent. *King v. Travis*, 170 Ill. App. 3d 1036, 1041 (1988).

¶ 23 The language of a will is the best proof of the testator's intent. *Coussee v. Estate of Efston*, 262 Ill. App. 3d 419, 423 (1994). "Words used in a will are to be given the meaning which the testator intended they should have" and are "understood in their ordinary sense unless a different

8

meaning is indicated by the context." *Andrews v. Applegate*, 223 Ill. 535, 537-38 (1906). Also, "[i]f possible, the court should construe the will or trust so that no language used by the testator is treated as a surplusage or rendered void or insignificant." *Harris Trust & Savings Bank v. Donovan*, 145 Ill. 2d 166, 172 (1991).

¶ 24     If the language of a will is clear and unambiguous, extrinsic evidence is not admitted to vary that language. *Steinke v. Novak*, 109 Ill. App. 3d 1034, 1038 (1982). However, where latent ambiguities exist in the will, extrinsic evidence will be considered to determine the testator's intent. *In re Estate of Levin*, 231 Ill. App. 3d 634, 637 (1992). Here, the parties agree that the will is clear and unambiguous, and none of the parties asked the circuit court to consider extrinsic evidence to determine Siedler's intent. Under such circumstances, the interpretation of Siedler's will involves a question of law that we will review *de novo*. *In re Estate of Williams*, 366 Ill. App. 3d 746, 748 (2006).

¶ 25     The parties agree that the language of the will at issue granted Bramlet a testamentary option to purchase Siedler's farm. The disagreement concerns whether Bramlet must match Cody's offer to purchase the farm for $491,222. Resolution of this issue, in turn, depends on whether Cody qualifies as a "third party purchaser." Siedler defined the purchase price for Bramlet's option as "the appraised value or for the purchase price offered by any *bona fide third party purchaser*, whichever is greater."

¶ 26     The term "third party purchaser" is not defined in the will, and in its order, the circuit court noted that it was unable to find case law on point regarding its definition. In their briefs, the parties have not cited any direct authority on the issue of whether a residual legatee qualifies as a "third party purchaser" in the context of the present case. Likewise, our research has not revealed any cases on this specific issue. See, *e.g.*, Jay M. Zitter, Annotation, *Determination of Price Under Testamentary Option to Buy Real Estate*, 13 A.L.R.4th 947 (1982) (compilation of cases from

9

multiple jurisdictions, none of which address whether a legatee qualifies as a "third party purchaser" or otherwise define the term). Like the circuit court, we will look to the plain and ordinary meaning of the term in the context in which it is used.

¶ 27    Black's Law Dictionary defines "third party" as "[a] person who is not a party to a lawsuit, agreement, or other transaction ***; someone other than the principal parties." Black's Law Dictionary 1518 (8th ed. 1999). The term "third party purchaser" is used at times in defining a right of first refusal in lease agreements. See, *e.g.*, *Turner v. Shirk*, 49 Ill. App. 3d 764, 766-67 (1977) (lease gave plaintiff " 'the opportunity to meet any bona fide offer from a third person' "); *LIN Broadcasting Corp. v. Metromedia, Inc.*, 542 N.E.2d 629, 632 (N.Y. 1989) ("Under a right of first refusal, the only offer involved is one to be made in the future, if and when the owner reaches agreement with a third-party purchaser."). In such situations, a *bona fide* offer from a third party means an offer from a "stranger" to the lease. See *Prince v. Elm Investment Co.*, 649 P.2d 820, 823 (Utah 1982) ("for purposes of a right of first refusal, a 'sale' occurs upon the transfer *** to a stranger to the lease"); *Byron Material, Inc. v. Ashelford*, 34 Ill. App. 3d 301, 305-06 (1975) (sale of an interest in leased property from one co-tenant to another did not involve a sale to "a bona fide purchaser" that would trigger a right of first refusal).

¶ 28    In the present case, Siedler used the term "third party purchaser" in defining the method for determining the purchase price of Bramlet's testamentary option to purchase the farm. Considering the plain and ordinary meaning of the term "third party purchaser," we believe that, by using that term, Siedler intended for Bramlet to match only *bona fide* offers from purchasers who were strangers to the will, not offers from residual legatees.

¶ 29    Fair market value has been defined as "the price for which the property would sell *under ordinary circumstances*." (Emphasis added.) *Department of Public Works & Buildings v. Oberlaender*, 42 Ill. 2d 410, 415 (1969). We believe that the language of the will indicates that

10

Siedler used the term "third party" so that the option price would be determined only by purchasers making *bona fide*, arm's length offers under ordinary circumstances. As the circuit court observed, Siedler intended for "third party purchaser" to mean "something more than *anyone* with a cash offer." (Emphasis added.) Had Siedler intended to require Bramlet to match offers from legatees, who will recover a percentage of the purchase price back upon distribution of the estate's residue, he would have required Bramlet to match *all bona fide* cash offers, not just offers from "third party purchasers." Therefore, under our interpretation of the plain language of the testamentary option, Siedler did not intend for Cody to qualify as a "third party purchaser" as that term is used in defining the option.

¶ 30    The circuit court correctly emphasized that Cody and Stephen Hopkins "would essentially be playing with 'house' money," which would allow them to bid more than fair cash market value. We agree with the circuit court that this would frustrate Siedler's intent by requiring Bramlet to purchase the property, not at fair cash market value, but at fair cash market value *plus a premium* created solely by the Hopkinses' unique position as residual legatees. The Hopkinses' ability to make an offer beyond the fair cash market value with no net financial consequence is not an offer made "under ordinary circumstances." We do not believe that Siedler intended to require Bramlet to purchase the farm at a price artificially inflated beyond the farm's fair cash market value due to offers from legatees.

¶ 31    We also agree with the circuit court that this interpretation of the will is bolstered by other language in the will concerning the sale of the property should Bramlet choose not to exercise the testamentary option. Under the plain language of the will, the executor is authorized to sell the farm "at a public or private sale, at the discretion of the Executor." Importantly, in defining this authority, Siedler did not limit the public or private sale to only "third party purchasers" as he did with respect to defining Bramlet's option purchase price. Therefore, as the circuit court recognized,

11

if Bramlet does not exercise his option to purchase the farm or does not close within 90 days of exercising his option, Cody and/or Stephen Hopkins, without the tag of *bona fide* third party purchasers, would be free to make an offer at a private sale or bid at a public sale. At that time, if they want to play with "house money," as the circuit court described it, they may do so without violating the plain language of the will or frustrating Siedler's intent with respect to Bramlet's option. Under the plain language of the will, it is only after the expiration of Bramlet's testamentary option can they make *bona fide* offers on the farm.

¶ 32    Finally, as we stated above, we should construe the will so that no language used by the testator is treated as a surplusage or rendered void or insignificant. *Harris Trust & Savings Bank*, 145 Ill. 2d at 172. Siedler specifically used the term "third party purchaser" to limit offers that can be used to set the testamentary option's purchase price. A holding that legatees under the will can make "third party" offers that Bramlet must match would be, essentially, a holding that anyone and everyone who makes a *bona fide* offer qualifies as a "third party purchaser." This interpretation would improperly treat Siedler's chosen term "third party purchaser" as meaningless surplusage. Based on the record before us, we are obligated to conclude that Siedler purposefully chose specific language to define the testamentary option's purchase price and that he did not include any meaningless surplusage in defining the method for determining the option's purchase price.

¶ 33    Cody and Stephen Hopkins argue that, by not requiring Bramlet to match Cody's bid, the circuit court denied the estate more than $100,000, with 20% of that loss inuring to the benefit of two churches and cemeteries. This may be true, but it does not allow us to reach a different result. The supreme court has stated that "courts are without power, under the guise of interpretation, to alter a testator's will or to make a new will for him." *Doblin v. Allison*, 92 Ill. App. 3d 942, 945 (1981) (citing *Vollmer v. McGowan*, 409 Ill. 306, 315 (1951)). Here, Siedler granted Bramlet a testamentary option to purchase the estate's real property, and Bramlet has the right to exercise

12

that option under the terms Siedler defined. We cannot rewrite Bramlet's testamentary option contrary to Siedler's intent even when doing so allows the estate to recover more money for legatees. As we emphasized at the beginning of our analysis, the testator's intent is the paramount consideration in interpreting a will.

¶ 34    Cody and Stephen Hopkins argue, alternatively, that the circuit court erred in not requiring the executor to allow additional time for other offers from *bona fide* third party purchasers. We agree with the circuit court that nothing in the will required the executor to seek offers from *bona fide* third party purchasers for any specified time. Instead, the will grants the executor discretion to accept Bramlet's option to purchase the farm and determine, within reason, how long to accept offers from *bona fide* third party purchasers. Also, as the circuit court noted, Siedler required Bramlet to exercise the option to purchase the farm within 90 days of notice of the appraised value and required him to close the sale within 90 days of exercising his option. We agree with the circuit court that requiring the executor to accept offers for any specific period of time is contrary to the plain language of the will and could frustrate Bramlet's ability to complete the transaction within the 90 day period, which, in turn, would frustrate Siedler's intent as specified in the will. Accordingly, the circuit court did not err in denying Cody and Stephen Hopkins's alternative request for relief.

¶ 35                                          CONCLUSION

¶ 36    For the foregoing reasons, the circuit court's November 7, 2018, order is hereby affirmed, and we remand for further proceedings consistent with this decision.

¶ 37    Affirmed; cause remanded.

2019 IL App (5th) 180574

NO. 5-18-0574

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* ESTATE OF VINCENT SIEDLER, Deceased | ) ) ) | Appeal from the Circuit Court of Pope County. |
| (Shirley Bramlet, as Independent Executor of the Estate of Vincent Siedler, and David Bramlet, | ) ) ) | |
| Petitioners-Appellees, | ) ) | |
| v. | ) ) | No. 18-P-7 |
| Cody Hopkins and Stephen Hopkins, | ) ) | Honorable Joseph M. Leberman, |
| Respondents-Appellants). | ) ) | Judge, presiding. |

---

**Opinion Filed:**       August 28, 2019

---

**Justices:**       Honorable Mark M. Boie, J.

Honorable Thomas M. Welch, J., and
Honorable Judy L. Cates, J.
Concur

---

**Attorney for Appellants**       Jonathan R. Cantrell, Hart Cantrell LLC, 602 W. Public Square, Benton, IL 62812

---

**Attorneys for Appellees**       Mark S. Johnson, Johnson, Schneider & Ferrell, L.L.C., 212 N. Main Street, Cape Girardeau, MO 63701 (for David Bramlet)

Craig R. Reeves, Michael R. Twomey, Barrett, Twomey, Broom, Hughes & Hoke, LLP, 100 North Illinois Avenue, P.O. Box 3747, Carbondale, IL 62902-3747 (for Shirley Bramlet, as Independent Executor of the Estate of Vincent Siedler)

---